We'll now call the next case, D.M. v. Oregon School Activities Association. And as we're getting set up and people are moving around the courtroom, I want to thank counsel for agreeing to move this to today as opposed to tomorrow. It's very, very, very helpful that you did that, so I much appreciate the professionalism. And when you're ready, counsel. May it please the court, my name is Shanoa Payne and I represent D.M. Defendant O.S.A.A. admittedly does not consider the ADA at all and does not engage in the required individual analysis of whether a student has a disability under the ADA or whether that student needs an accommodation. Instead, limiting its fifth-year hardship waivers only to a subsect of students with disabilities those with an IEP under IDEA. In turn, students like Plaintiff here, who have mental health disabilities but do not otherwise qualify for special education services, are denied accommodations from Defendant Carte Blanche. He does have a 504 plan, does he not? He did have a 504 plan issued by his school that determined that he had substantial limitations in attention-related tasks, completing activities requiring strong skills in executive function and self-regulating emotions. And counsel, I just want to make sure I understood at this stage of the litigation what relief your client is seeking because he's not seeking to play high school football anymore, correct? That's correct. We did appeal the denial of the injunction, but he graduated high school in that time, so we're not removing our injunctive relief. So if we were to agree with you on the merits and were to send this back to district court, what relief would your client be seeking at that time? Vacating the order for motion for summary judgment, and he is continuing to seek damages, both compensatory, which would be the limited damages post Cummings under the ADA. Okay. And then we have two state discrimination claims that do allow emotional distress damages on top of that. Gotcha. Thank you. I'd like to begin with our argument that the OSAA's policies constitute a facial violation of the ADA because I do think it is dispositive and this court need not go further into fundamental alteration or causation because of the fact that OSAA has a strict adherence to its criteria without any exception for students with disabilities under the ADA. This sort of blanket rule or categorical exclusion of considering accommodations at all for students with disabilities under the ADA constitutes a facial violation of the ADA, and also the issue that was raised in the answering brief, it also constitutes deliberate indifference, which would allow for those monetary damages. This court has repeatedly found that a failure to investigate at all, whether a student has a disability under the ADA or whether an individual can be accommodated, constitutes deliberate indifference as well. Do you want to talk about this very recent First Circuit case? I know that the amicus brief that the United States filed relied very heavily on the district court case, which the First Circuit kind of changed a little bit. Can you talk about that First Circuit case and why we shouldn't worry about it? I assume that's what you're going to say. Yes, Your Honor. Thank you. I did file a 28-J letter addressing the First Circuit's reversal of the district court opinion, and it primarily reversed on the issue of causation, and it also aligned with Circuit opinions that this Court has already rejected in Martin. So there is a line of decisions in Potgin, McPherson, and Sandison that allow for a finding that a rule is essential or fundamental without going into the individual circumstances of whether the particular person seeking the accommodation would actually undermine the purposes of the rule. This Court rejected that trilogy of cases in Martin, and obviously the Supreme Court affirmed this Court's decision and said you can't stop at just determining whether a rule is important. You have to look at whether accommodating the particular individual under the particular circumstances of the case undermine those salient purposes of the rule. And that's really where the district court erred here, is it followed that line of cases and stopped at sort of the prong one analysis, which was the rule is important, end of analysis, and this Court and the Supreme Court has said you can't stop there, you must go further and consider whether providing a modification to an individual would actually undermine the purposes of that rule. This Court adopted the dissent in Potgin and the Seventh Circuit's case in Washington that both when considering the individual circumstances, there would be no violation of the rule if, for instance, there is no redshirting, there's no safety risk. And here there is no argument that my client was intentionally redshirting by taking a year of mental health treatment. It's also important to remember that Diem is actually the same age as his peers when he was held back because he had previously skipped a year. So he wasn't older or more mature than his peers either, which is a very important fact when considering the individual circumstances. And there was also even a finding by the district court that playing football promoted his education and motivated him to go to college. And those are the types of facts here that were never considered by the district court and are ignored because the OSA doesn't consider individual circumstances at all. Can I go in a little slightly different direction? I was going to ask a little bit about deliberate indifference. First of all, am I correct in thinking that because all that's left is the various types of damages that you would need to show deliberate indifference in order to... I guess what I'm trying to figure out is, is there any part of your case that wasn't addressed by the prior panel that still exists such that deliberate indifference is not an issue for that part of the case? The state claims do not require a showing of deliberate indifference. The Oregon Court of Appeals has determined that the education discrimination statute does not require a finding of deliberate indifference to seek damages. So if you decide, in the federal case, if the federal claim stays in and the state claims are pendent, but as to the federal claims only, what I'm struggling with a little bit is, in this case, it feels a little bit like a qualified immunity. I realize it's not qualified immunity, but it feels a little bit like that because, to me, sort of the elephant in the room is it's hard for me... There's very, very challenging issues that we've been talking about and that you've been talking about so far, but once you get past those issues, if we were to send it back, you would have to show deliberate indifference in front of the district court. I don't really see any evidence. I had my clerk dig through because this was litigated. I understand the district court didn't rule on this, but it was litigated in front of the district court, correct?  And what is your best evidence of deliberate indifference that you were able to present to the district court? Again, it would be that failure to investigate and failure to engage in the individual analysis and having that blanket exclusion. Under Vincent Duvall, those cases in the circuit have said that if you don't engage in that analysis at all, then that is deliberately indifferent. So here, there were no findings by OSAA that our client didn't have a disability or that it would even pose a fundamental alteration to provide the accommodation to him. They simply denied it because he didn't meet their existing criteria. And that is a fundamental violation and deliberately indifferent. As I understand, it was developed in litigation decades ago. It seems like the school district felt like, we have this criteria and we want this to be as formulaic as possible. I understand it's got to be individualized, but you can see also why, if you're somebody making decisions, you want a formula to apply. So they apply the formula. You're basically saying that, it sounds to me like your argument is, well, if they apply this formula, that's deliberate indifference. But isn't there some sort of aspect that they need to have known the law and been deliberately, willfully, at least in some aspect, disregarding it? The Bingham case is helpful in this regard because the district... The Bingham case, the prior litigation that OSAA went through, because Judge Coffin in that case ruled that the ADA did apply to OSAA and that they were required to engage in an individual analysis. Now, in finding that they had complied with the injunction in that case, which was specific to a student with a learning disability and IEP, this sort of criteria was considered to fulfill the injunction in that case. But the court also was very clear that there was to be no deference owed to the institution unless they made substantial findings of fact. And here, that's exactly what's missing and why there would be no deference. So the OSAA was aware that they were required to engage in an individual analysis that the ADA applied to them by this Bingham decision, and that they needed to make specific findings regarding disability and or fundamental alteration. I'm going to ask you about that, about the findings, because as I read the briefings, they didn't make findings of facts, but it seems like the district relied on certain facts. The facts that they relied on were like that he didn't have. In other words, they weren't just making this decision in a vacuum. But the facts they thought were dispositive was that he did not have an IEP, which is something individualized to DM, right? But your argument is, yeah, but that's not a dispositive fact, and you may be correct on that. But it is, they did have individualized things that they're relying on, but your argument is, and you may be right, that they were not the correct individualized things that they're relying on. That's correct. I think the argument that my friend has made in the brief is that considering whether a student meets its existing criteria is an individualized analysis. But that's not the individualized analysis that the ADA requires, because OSA admits that, I mean, basically there would have been no facts that our client could have put before this organization that would have led it to determine that he could be accommodated, because they have this strict adherence to you don't have an IEP, you don't get the modification. They have this formula, and you have these categories you can fit into, but there's no outside of that. And it's really a bad criteria for the reason that it is both under-inclusive and over-inclusive, in the sense that it automatically excludes all this group of students with disabilities that don't have special education services. Does it affect this deliberate indifference analysis that they, you know, they had to, as I understand the first note is that they had to have knowledge that the harm to a federally protected right was substantially likely. You know, we have a district court judge here who ruled against you repeatedly, and it seemed to, if I was a school district, I would be thinking, we're winning, we're winning, we're winning. And so does that affect the substantially likely prong, or is that not something we should take into account? No, especially because the district court aired its analysis here by citing two circuit court cases that had already been rejected by the Ninth Circuit. So the only question I've got on that is, assuming it did, assuming it did, I mean, there's got to be play in the joint, so to speak, between being wrong and being deliberately indifferently wrong. So where does that play, and why, you know, it seems to me when I'm asking you about that, you're more saying, well, they were wrong. If they had engaged in individualized analysis in this case and determined that our client didn't have a disability or that accommodating him would pose a fundamental alteration, then I think that would questionably not constitute deliberate indifference, because they went through the analysis, and they would actually be owed maybe some difference to their own findings on that. But they don't engage in that analysis. They will never engage in that analysis under their existing rules, and they did not do that in this case. And under Vincent and Duval, that lack of investigation, that lack of individualized analysis, is exactly what constitutes deliberate indifference. Unless you have a further question. You want to reserve? I do. I do. Thank you. All right. And I may give you a little more time. This is a more involved case. Okay. Thank you, Your Honor. You got it. May it please the Court, Counsel Jonathan Rodmacher for the Oregon School Activities Association. The four issues I wanted to try and touch on were the fundamental issues associated with the rule, the causation analysis, meaningful access, and no deliberate indifference. Counsel focuses on one part of the rule, eight semesters and the IEP exception, but not the other part of the rule. And frankly, the real true fundamental part of the rule in this circumstance are its exceptions, and that is, are there circumstances beyond the control of the student and the student's parents whereby the student could not make academic progress? Because fundamentally, school is about school, and if somebody can demonstrate that they have a disability, whether it's under an IEP or not under an IEP, just a 504, and that as a result of that disability they were unable to graduate in four years, then they do fall within one of the exceptions. So the fundamental rule is eight semesters, but with the caveat that an inability to demonstrate progress gives you the basis for an exception. But even if DM could have satisfied that criteria, he didn't have an IEP. So wouldn't your client have come to the same conclusion by invoking that aspect of the rule? No, Judge, and that's why I think by saying to the court they only have an IEP exception, they ignore the fact that, no, the pre-2000, the pre-Bingham rule was, if circumstances beyond your control result in your inability to graduate in four years, then you have a basis for having an exception. And the individualized... Even if he was able to make that the showing that you're urging. There's one case that's actually called out by plaintiff where, and this is post-2000s, where the student's caregiver was murdered and his brother was murdered and he was out of school for a semester and he got, I can't remember if it was a fifth year or just one extra semester, but that example is called out because that was part of the discovery in this case. But did that student also have an IEP? That student, one case, did not have an IEP. Yes, Judge, I don't know that if in that case there was an analysis of whether or not there was a disability. Again, it was you couldn't graduate from school. And that really takes us to the causation piece. Because here, there's all kinds of ways in which you could imagine a causation, some third party or third actor causing something to happen. But in here the record is factually clear, and surprisingly the reply brief doesn't even mention it, that the school says to the plaintiff, you can graduate, to his mother, you can graduate this year. Congratulations, in fact, if you change this class to a language arts class, you can graduate after the second trimester. And yet the choice is made not to graduate in the four years. From an educational standpoint, does a parent have every right to do that? Of course. But do they get to make that decision and then say, and I get a fifth year of sports? That's where the fundamental nature of the rule is. If it's beyond your control, then you fall within one of the exceptions we can make. Well, they would get to make that decision if the parent thought that the child's disability was such that they shouldn't graduate that year, they should graduate in a year. And if they were right about that, that the child had a disability and that was why that decision should be made to keep them for another year, then they can make that decision. And then the fact that they didn't have an IDPA, IP, whatever that is, they didn't have that under IDEA, would not, it seems to me that requiring that showing, if they still have a disability, there is some tension there, which causes me to think that's really complicated. That's really complicated. And I could see where somebody could screw that up and not necessarily be deliberately indifferent. And so what I'm trying to figure out is, first of all, let me ask you what I asked your colleague on our site is, is there a, do we have to go through all of this to reach the deliberate indifference? Or is there some, is there any cases that say we have to do that? Or can we kind of like you would do in a qualified immunity case where you say, or as we were talking about earlier in a plain error prejudice type situation, can we just jump to the deliberate indifference? And I understand the district court did not. And so there is that, but the record is there. The issued arguments were made to the district court. So what is preventing us from deciding this case on deliberate indifference? There's nothing, Judge. The request for injunctive relief is gone. It's just damages. Okay. So her argument, her argument is, yeah, but you didn't do an individualized, I think, I think if I understood it correctly, I want to give it, but that you, you error because, or the school error because they did not do any individualized inquiry and they didn't look into the facts. And so why is that wrong? Well, it's false. So, so the record reflects that in fact, not only did we do the internal appeal, both to the executive director and to the board, but then our processes are, we have a judge. I thought about it. There's a lot of steps you went through, but to give her argument is due. I believe that the, that the argument is not just that you went through the steps, but it's actually errors that you made in the steps. It's like, it's like you never did the right inquiry. You didn't do an individualized inquiry. You just, you just applied some sort of rigid rule, but it kept. And that's why I think that's the argument. Factually, what we did is after the internal appeals, we then have a third party judge, former chief judge, the Oregon court of appeals, Mary Deetz, come in here in a full evidentiary hearing opportunity for briefing and evidence and witnesses and the judge. And of course, I say that because how could you have a more particularized assessment of a person's issues, arguments and facts than that? Was the issue of whether or not DM had a disability presented in all of that? And was it, was it, was it addressed? That was not disputed because somebody said he has a psychological disability. The question is, did it cause him to not be able to graduate? And, and the choice that his mother made to send him to. My position is if, if, if these decision makers and your client got that causation question wrong, they didn't deliberately get that causation question wrong. Is that? Right. They applied the rule, the, the, the two prongs that were issued. They could be wrong, but they, but they weren't, but what's the evidence that they were deliberately wrong? Is that your? There's no evidence, which is why we asked the district court to rule on the issue. I, I also think that it comes in a context that I can't imagine exists anywhere else, which is we didn't used to have a disability exception until Judge Coffin required it. The rest of his decision analysis was vacated because the case became moot, but he approved this rule and this court approved this rule. So the idea that even 20 years later. Okay, but, so on that issue, I believe that DM's argument is that, yes, we have a rule, but that rule is not the rule for any and every circumstance. And so that's how you erred was by applying that rule and not looking to see if there was some other way that under the ADA that he was, that you're required to accommodate him. The plaintiff would say, if somebody comes and says, I have a disability, it hasn't caused me not to graduate timely, but it caused a parent to make a different decision so I couldn't graduate. You have to give me a fifth year. And we'd say, no, it's all about the choice piece and causation. Are, is circumstances beyond your control, whether it's an IEP or not? And I would point out. And if you're wrong on that causation, if they're correct that causation, that before, if you look at a before analysis and the parent makes a decision, but the decision is based in part on a disability, then, and that downstream effect of that is that you don't graduate in time. And that's enough to establish causation. Then I assume you're, then you would lose on all of the first stuff, but what's, you know, you wouldn't be deliberately indifferent on having made the causation argument? Right. By definition, if, if a court said you're wrong, if that equals deliberate indifference, then just throw out the words deliberate indifference. It doesn't matter. I also point out that the causation analysis here is not just the, the first prong of our exception, but also the IEP rule that Judge Coffin in this court approved in 2000, which is that if a student has an IEP and is meeting the terms of the IEP, but nonetheless is not able to graduate, then they could get a fifth year of sports. And I point that out because in that circumstance, if an IEP said, student, you need to take a math class or you're not going to graduate. So your IEP requires you to take a math class. If the parent says, you know, math makes my student anxious, I'm going to put him in PE instead. And so he didn't graduate in four years. That would be a causation issue under the IEP rule to say, you could make that choice as a parent for your kid. That doesn't mean you get to make a choice that then says they get a fifth year of sports. So even embedded in the IEP rule approved by the district court in this court in Bingham, there's still that same causation element of saying you can make a choice, but you can't then make a choice that says you get a fifth year. The Rhode Island, the First Circuit decision, did not just talk about causation. It also talked about the fundamental nature of the rule. I'm looking at slip-off 23 at footnote 11 where the court said, by contrast, here the proposed accommodation implicates the league's rules for the whole of its interscholastic athletics program and must be analyzed in light of the objectives served by that program at large, not merely the objectives of the individual sport that it facilitates. So it's looking big picture. How are you making sure that all students fundamentally try and graduate in four years if they can, but also are only going to get four years of sports because everybody only gets four years of sports. And to allow a choice by a parent to elevate some other student to the fifth year of eligibility is where it becomes a fundamental failure in the rule. Finally, meaningful access. It's raised not just in the briefing, but also was part of the administrative decision by Judge Jeetz in the internal appeals process analyzing the plaintiff's claim. She talked about meaningful access and how the fact that he had access to sports for four years, just because he has a disability doesn't mean he gets sports for as long as he's in high school, because arguably you can be in high school until you're 20 if that's the choice that is made. That doesn't mean you get sports because when he's on the field, somebody else is not on the field. Somebody who only has four years. And that's where the meaningful access. You made that argument. As I read the other side, it seemed to me their response was there's nothing in the record to demonstrate that he would have taken a spot from somebody else. I didn't know how to take that. It seemed to me like it was sort of just almost like logic would say that if, well, it depends on what you mean by that. If he got on the team but didn't play and the team was a small school like I went to that could have always taken more people, then it wouldn't take a spot from somebody. If he plays, it seems like it's a given he's taking a spot from somebody.  And if it's like the teams often are, I think, in bigger schools, even if he's not playing, there's only so many spots on the team. So what I'm trying to figure out is does there need to be something? What is there in the record? And does there need to be something in the record for the fact that if he was put on this football team that it would take somebody else's spot? Judge, I think the record is that it's a no-cut football program, but he could stand on the sidelines even as— I'm sorry, Judge Owens knows what no-cut means, but I don't know what that means. Everybody gets to be on the team. No one gets cut. Oh, everybody gets to be on the team. So you can stand on the sidelines, but I don't think there's a dispute that— You can have a hundred-man roster. I don't know if there's some upper limit, but for Sheldon High School, although I think they won state the year before, but I think they said it's no-cut. They're a good team, but apparently they don't cut people. And I don't think that— So just so I understand what that means, that means that you get to be on the team doesn't necessarily mean you get to play. If you're not eligible, you could stand on the sideline and be a team member in a jersey. But I mean like even if you're eligible, obviously, like you might be on the team, but you wouldn't necessarily get to play. Yeah, we're not going to force the coach to put the student in. Right. But it's the opportunity, and so that student who had played, there's no guarantees that he would have been on the field, but 11-person team on the field at any given time, you take that opportunity. And that's where, I mean, the First Circuit pointed that out, that is preventing abnormally older students from depriving their younger peers of opportunities to play that they would otherwise enjoy. Now, they would say— But he wasn't older. Yeah, that's not the case here. Well, he wasn't older than other people who were four or five years in, but he's older than the freshman and sophomore and junior. But that's true. I mean, that's the nature of high school. I mean, you have seniors who are usually older than freshmen. Right, Judge. And that's where those people only have four years. So if I can't play my freshman or sophomore year because somebody's got a fifth year, necessarily— not that this particular person is going to take this particular person's spot on the roster, but that writ large, the reason why you say, we're not going to let you make choices that give you a fifth year is because you're trying to create harmony amongst schools and between the students. Let me ask you this, because it seems to me— and, you know, we have not conferenced about this case, so I don't know where this case is going. But if we were to agree with the other side in this case, it seems like this case could go on for years and years and years. And the relief being sought here is not for him to play football again, at least on high school. Those days have passed. It's money. Right. I'm curious what types of mediation efforts you guys have undertaken in this case. I see the smart coming, but— I mean, because we have some very good mediators here in the Ninth Circuit, and to me this seems like this is the classic case where this could be ended outside of the courtroom rather than keep dragging this through the courtroom. So what's your response to that? Judge, I'm only smirking because I just did a series of briefings with Judge Immergat, and it's all about mediation and good faith mediation. Okay, well— So that's where a cavalcade of thoughts come to mind about reasonableness of settlement discussions. And I would say that neither side has had much by way of—by settlement negotiations. For example, I don't think we participated in the Ninth— we did participate in the Ninth Circuit program, but it was relatively abbreviated. Okay. And would you be open to trying it again? Always.  All right, thank you, counsel. Thank you. So get to your points, but I have the same question. Okay, I do want to address really briefly the causation issue before I get to your settlement question. And here, OSA repeatedly relies on parental choice as somehow being dispositive in causation. Again, this is something that they can argue before a jury, but on summary judgment, there are absolutely facts from which a jury could decide that the client's disability was the cause of his need for a fifth year. It wasn't simply parental choice. And OSA says, oh, he had enough credits to graduate in four years. Credits is not the only issue when it comes to being prepared to graduate with your cohort. And the school expressly found that due to the deficient education that DM received while he was at Triumph, that he was not prepared to graduate with his assigned cohort. I don't understand that. I thought they gave him full credit for all the coursework that he did in Utah. He did get credit. The substance of the education was basically filling out worksheets. Our client testified that it was not at a high school level. It was at a sixth grade level at most doing that work. But isn't the record that he could have graduated either in December or at the end of the school year with his cohorts had he taken a particular class? Based on credits only without considering whether he was actually, had actually received a thorough substantive education while he was at Triumph. Where does that come from? I mean, the rule here is designed to make sure that the students progress to graduation. The record says he could have graduated if he'd done this one course. I'm not sure I'm following your argument. Where's the damage? Well, again, I think you would defer to the school's decision in this case to allow him to stay in school for a fifth year because they looked at the education that he received at Triumph Academy and determined that it was not rigorous, it was atypical, and therefore he was not prepared to meet graduation requirements with his assigned cohort. And I think that is a... That totally confused me with this argument. I thought that he would have been able to graduate. Again, he could have credit-wise only if you considered credits. But education... I don't understand the distinction. If you have enough credits to graduate, you graduate. No. For students with disabilities, they are allowed to stay in school, I believe, up until the age they are 21 years old. Is that what you're telling us that the school was saying? The school determined that he was not prepared to meet graduation requirements with his assigned cohort. So they're not going to let him graduate? Correct. Okay. Well, we'll check the record, but this is news. This is a surprise to me. And one more brief point. I realize I'm over time, but to answer your question about settlement, we did discuss settlement during the Ninth Circuit mediation, and we were open to those discussions, but we were far apart on the money values and couldn't. And I think OSA's position was it succeeded at the TRO stage, it succeeded at the preliminary injunction stage, it succeeded at summary judgment, and it believes it's going to succeed here. And so I think it may take a decision from this court to help facilitate settlement. And then one more point for Judge Van Dyke on the deliberate indifference. In Lavelle, this court made very clear that deliberate indifference is not to measure ill will toward people with disabilities. So there is no requirement that OSA have any hostility towards students with disabilities or that it was motivated to discriminate against him. Again, it goes back to failing to engage in that required analysis. So you said what it is, and that makes sense. Am I correct in thinking that what it is is knowing you have a legal right and then deliberately, or maybe recklessly, I don't know, but something more than negligently ignoring that legal right? I think that's correct.  And no other questions? Thank you, Your Honor. Thank you, both of you, for your briefing and argument in this case. The matter is submitted.
judges: TALLMAN, OWENS, VANDYKE